IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Jesus Vasquez, | Case No. 4:10 CV 2511 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| John T. Shartle, | |
| Respondent. | |

### INTRODUCTION

In November 2010, *pro se* Petitioner Jesus Vasquez, an inmate at the Federal Correctional Institution Elkton (FCI Elkton), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1). Petitioner was ordered to pay the $5 filing fee or file an application to proceed *in forma pauperis* within thirty days. On January 5, 2011, the Petition was dismissed without prejudice for failure to comply with the Court's Order (Doc. No. 3).

Petitioner paid the filing fee on January 6, 2011. He filed a Motion for Reconsideration (Doc. No. 5) indicating he made a good faith effort to pay the fee on time and that the delay was not his fault. For good cause shown, the case was reopened (Doc. No. 6). The Petition is now ripe for review.

Petitioner seeks restoration of 40 days vested and 108 days non-vested Good Conduct Time (GCT) based on alleged deprivations of due process and liberty interests.

**BACKGROUND**

In 2009, Petitioner was incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey (FCI Fort Dix). On November 2, 2009, a staff member conducting rounds noticed two inmates seated inside the backstop between sets of bleachers. As he approached, Petitioner began to run away. The staff member noticed an object in Petitioner's hands and twice ordered him to stop. During a short chase and struggle, Petitioner threw the object. With the assistance of other responding officers, the object, a cell phone, was found.

Petitioner was charged with Possession of a Hazardous Tool - Cell Phone, in violation of Prohibited Acts Code (PAC) 108 and Refusing to Obey an Order, a violation of PAC 307. *See* 28 C.F.R. § 541.13 tbl.3. Petitioner denied the charges and a disciplinary hearing was held.

At the hearing held on November 13, there was no dispute Petitioner possessed an unauthorized cell phone and that he ran away from the officer. The hearing officer noted that PAC 108 prohibited the "[p]ossession, manufacture, or introduction of a hazardous tool ([t]ools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R. § 541.13 tbl.3. Petitioner was advised that cell phones were characterized as hazardous tools because they could be used to arrange a rendezvous for an escape or the introduction of contraband, or allow prisoners to contact outside individuals with the intent to conduct illegal activities. Furthermore, the hearing officer referred to an October 2006 Bureau of Prisons (BOP) Memorandum that stated cell phones were considered a threat to the security and orderly running of the institution.

Based on the reporting officer's testimony, Petitioner's statement, and a photograph of the confiscated phone, the hearing officer found Petitioner in violation of PACs 108 and 307. Petitioner

was sanctioned with, among other things, the loss of 40 days vested GCT and forfeiture of 270 days non-vested GCT. Petitioner received a copy of the hearing officer's decision on December 11, 2009, notifying him of his right to appeal within twenty calendar days.

Petitioner filed an appeal on December 30, 2009 with the regional appeal coordinator. He argued he was wrongly charged with a PAC 108 violation because he believed possession of a cell phone was a PAC 305 ("Possession of Anything Unauthorized") violation. He claimed the hearing officer abused his authority when he imposed the maximum available sanction under PAC 108 since Petitioner had no prior incidents and this was his first 100-series serious violation.

The regional appeal coordinator's office received Petitioner's appeal on January 4, 2010, and rejected the appeal as untimely. The coordinator noted that appeals must be received within twenty calendar days, including mail time, of a prisoner's receipt of the hearing officer's decision.

Petitioner then filed an appeal with the BOP Central Office. He challenged the rejection of his appeal as untimely, arguing his appeal was timely because he filed with the prison staff within twenty days of his receipt of the hearing officer's report (December 11 to December 30). In support of his argument, Petitioner cited the mailbox rule established in *Houston v. Lack*, 487 U.S. 266 (1988). The Central Office affirmed the regional decision and rejected his appeal as untimely. Petitioner subsequently filed this action.

The Petition before this Court asserts four claims for relief. Petitioner claims: (1) violation of due process, (2) the BOP lacked authority to impose a PAC 108 violation under the Administrative Procedures Act (APA), (3) PAC 108 is void for vagueness, and (4) violation of Equal Protection. Petitioner also seeks a waiver of the administrative remedy exhaustion requirement under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), and the BOP's Administrative Remedy

3

Program, 28 C.F.R. § 542.15.  Petitioner argues that additional administrative reviews of his claims would be futile because any further appeals will be rejected based on the earlier determination that his original appeal was untimely.

## ANALYSIS

### Exhaustion

Because "[n]o action shall be brought . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted," the Court's analysis must begin with Petitioner's request for a waiver of the PLRA exhaustion requirement before reviewing Petitioner's claims for relief.  42 U.S.C. § 1997e(a).

It appears from Petitioner's pleadings that he has, in good faith, attempted to exhaust all his administrative remedies as defined by the BOP's Administrative Remedy Program.  28 C.F.R. § 542.10 *et seq*.  After being charged with PAC violations, Petitioner requested, and received, a hearing before a disciplinary officer.  After the hearing officer's decision, Petitioner claims he submitted to prison officials his appeal to the regional coordinator within the twenty-day time limit set by 28 C.F.R. § 542.15(a).  After the regional coordinator held the appeal untimely because the regional office did not *receive* the appeal within twenty days, Petitioner claims he again timely submitted his appeal to the BOP General Counsel at the Central Office within the thirty-day time period prescribed by 28 C.F.R. § 542.15(a).

It appears Petitioner exhausted, or in good faith attempted to exhaust, all of his administrative remedies.  Therefore, this Court shall analyze the merits of the timeliness determination.

**Timeliness**

Federal prisoners are required to exhaust administrative remedies before filing a habeas petition under 28 U.S.C. § 2241. *Little v. Hopkins*, 638 F.2d 953, 953–54 (6th Cir. 1981). If a prisoner is unable to obtain an administrative remedy because he failed to appeal in a timely manner, then he has procedurally defaulted his habeas corpus claim. *Engle v. United States*, 2001 WL 1356205, at *2 (6th Cir. 2001). In such cases, Petitioner must show cause and prejudice to bring the claim in court. *Id*.

The regional BOP office rejected Petitioner's appeal as untimely because it was not *received* within twenty days of Petitioner's receipt of the hearing officer's report on December 11, 2009. The regional office's rejection notice indicated "receipt" of Petitioner's appeal on January 4, 2010 -- beyond the twenty-day window. However, Petitioner argues his appeal was timely based on the mailbox rule. He claims the BOP staff did not give him an appeal form until December 15, a fact corroborated by dated staff initials on the form. The BOP stamped his completed appeal form on December 30, 2009, the day Petitioner provided it to staff for mailing.

The governing regulation, 28 C.F.R. § 542.14, provides:

(a) Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form . . ., is 20 calendar days following the date on which the basis for the Request occurred.

\* \* \*

(d) Exceptions to initial filing at institution–

\* \* \*

(2) DHO appeals. DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.

A *pro se* habeas petitioner "files" a notice of appeal upon delivery to prison officials for forwarding by mail to the clerk of courts. *Houston*, 487 U.S. at 270. The Supreme Court established

this 'mail box' rule based, in part, on the rationale that prisoners lose control over the processing of their appeals once they are turned over to prison officials. *Id*.

When Petitioner filed his administrative appeal, there was no BOP regulation that: (1) required an appeal be "received" within twenty days of an adverse decision by a hearing officer; (2) defined the term "submit," as used in 28 C.F.R. §§ 542.14 or 542.15(a), to mean that an appeal must be "received" by the regional office within twenty days; or (3) mandated that the twenty-day time limitation includes mail time. Therefore, sufficient ambiguity exists to apply the prison mailbox rule to administrative appeals filed by *pro se* inmates under 28 C.F.R. § 542.14. Because the Court finds Petitioner timely submitted his appeal to the regional office within the twenty-day window, Petitioner's claim is not procedurally defaulted and the merits of Petitioner's four claims will be addressed next.

**Due Process**

Petitioner first argues that his due process rights were violated because he was not given fair notice of the severity of punishment for possession of a cell phone. Petitioner further claims he never received notice that a cell phone was a hazardous tool under PAC 108. The Petition references, but does not include, an "Exhibit 2," which allegedly shows that a proposal was made to amend PAC 108 to include cell phones in the definition of hazardous tools but that the amended PAC 108 was never adopted.

A due process violation in a prison misconduct proceeding that results in the loss of good time credit may be remedied through a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). An inmate possesses a due process liberty interest in good-time credit which has already been earned and in which the inmate is vested, as it will affect the duration of the inmate's confinement.

6

*Sandin v. Conner*, 515 U.S. 472, 483 (1995). Because Petitioner was disciplined and sanctioned with the loss of GCT, he is entitled to due process protection with respect to his proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

The protections due an inmate include: (1) written notice of the charges at least twenty-four hours before a hearing to enable the inmate to prepare a defense; (2) ability to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety; and (3) a written explanation of the evidence relied on and reasons for disciplinary action. *Wolff*, 418 U.S. at 564–66. A disciplinary decision will satisfy the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455–57 (1985).

Other courts reviewing whether a cell phone is a hazardous tool under PAC 108, have established that the BOP's regulations clearly include cell phones as dangerous tools, and did so long before the incident at issue here. "BOP's definition of a hazardous tool to include a cell phone is not plainly erroneous or inconsistent with BOP regulations." *Robinson v. Warden*, 250 F. App'x 462, 464 (3d Cir. 2007) (citing *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 389 (3d Cir. 2001)). *See also Booth v. Patton*, 2009 WL 1636391, *4 (E.D. Ky. 2009) (cell phone considered hazardous tool under BOP Program Statement 5270.07) (citing *Barnes v. Warden, FCI Texarkana*, 2008 WL 3481942, *3 (E.D. Tex. 2008) (rejecting prisoner's challenge to PAC 108 violation for possession of a cell phone)). Petitioner cannot rely on his own lack of knowledge to claim he was not provided adequate notice.

Furthermore, Petitioner was provided all the procedural safeguards due under *Wolff*. He was provided notice of the charges more than a week before his discipline hearing; he was offered, but refused, the opportunity to call witnesses or have staff representation; and he received a written

7

explanation of the disciplinary action taken against him after the hearing. Petitioner's due process claim is without merit.

**APA Claim**

Petitioner's second argument is that the BOP lacked authority to impose a PAC 108 violation under the APA. Petitioner claims that because the language of PAC 108 did not originally contemplate cell phones, the BOP could not interpret PAC 108 to include cell phones without amending the Code of Regulations set forth in Table 3 of 28 C.F.R. § 541.

This argument too is not well-taken. The APA exempts from notice and comment interpretative rules or general statements of policy. *See* 5 U.S.C. § 553(b)(3)(A). Furthermore, the "BOP's internal agency guideline[s]" are not subject to the notice and comment requirements of the APA. *Reno v. Koray*, 515 U.S. 50, 61 (1995); *see also Royal v. Tombone*, 141 F.3d 596, 600 (5th Cir. 1998) (rejecting prisoner's argument that BOP's change in policy was invalid because it was not promulgated in accordance with the APA, as agency guidelines are "promulgated internally and may be altered at will by the BOP"). Here, the challenged action is an internal BOP Memorandum addressing the classification of cell phones as hazardous tools, which is expressly exempt from the "notice and comment" requirements of the APA. Even if the Memorandum were construed broadly enough to fall under the umbrella of an APA "rule," the Sixth Circuit has upheld the BOP's action under similar circumstances as merely adopting "interpretive rules." *See Dismas Charities, Inc. v. United States*, 401 F.3d 666, 680 (6th Cir. 2005) (change in BOP policy was an "interpretive rule" and, as such, not subject to notice and comment rulemaking under the APA).

**Vagueness**

Petitioner next argues that PAC 108 is void for vagueness. PAC 108 states:

Possession, manufacture, or introduction of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade).

28 C.F.R. § 541.13 tbl.3.

While due process prohibits excessively vague laws, prison regulations do not require the degree of specificity required for laws applicable to free citizens. *See El-Amin v. Tirey*, 817 F. Supp. 694, 701 (W.D. Tenn. 1993). Thus, the Sixth Circuit has rejected the view that the degree of specificity required for prison regulations is as strict as ordinary criminal sanctions. *Wolfel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992) (stating that it is nearly impossible for prison authorities to anticipate, through narrowly drawn regulations, every conceivable form of misconduct which threatens prison security).

Petitioner essentially argues that, without knowing the particular sanction he would be facing if his infraction were detected, he was prevented from determining whether his decision to commit the infraction was "worth" risking the sanctions he might suffer. However, he had "fair warning that [his] conduct was proscribed." *Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir. 1984). While he has a due process right to notice as to general categories of the acts prohibited, Petitioner has no due process right to notice as to any specific administrative sanction he might face if his violation gets detected. *Id.* at 368–70 (a prisoner's right to notice means that the rules must give a person of ordinary intelligence notice of the actions prohibited). Under these facts, the categorization of a cell phone as a hazardous tool was fairly applied to conduct that Petitioner knew violated prison rules, and was not unconstitutionally vague.

9

**Equal Protection**

Petitioner's final claim asserts he was charged with a more severe PAC violation than other inmates engaged in the same misconduct. As part of his argument, Petitioner refers to *Neagle v. Zickefoose*, No. 09-2016, an unpublished case from the District of New Jersey. Petitioner argues his PAC 108 violation should be expunged as it was for the petitioner in *Neagle* (recaptioned *Neagle v. Grondolsky*, 2010 WL 2546021 (D. N.J. 2010)).

Petitioner fails to assert he is member of a protected class as required for an equal protection claim; he simply compares his treatment to that imposed upon other prisoners who are "disliked." This is not sufficient -- an equal protection claimant must demonstrate not merely different treatment from others similarly situated but that such different treatment was not rationally related to a legitimate government interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).

Moreover, Petitioner does not specifically point to discipline imposed upon any other inmates who were caught using a cell phone. Petitioner's citation to *Neagle* is also of no help here. While the record in *Neagle* reflects that the prisoner's PAC 108 violation was expunged by the BOP, the record does not indicate *why* the BOP chose to expunge the violation for that specific prisoner. *Neagle*, 2010 WL 2546021, at *2. Even if Petitioner identified a case in which a prisoner received different discipline, the hearing officer articulated a justification, supported by the necessary "some evidence," for the punishment imposed on Petitioner. *Superintendent, Mass. Corr. Inst., Walpole*, 472 U.S. at 455-57. Accordingly, the equal protection claim is without merit as well.

**CONCLUSION**

Based on the foregoing, the Petition is dismissed pursuant to 28 U.S.C. § 2243. This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 18, 2011